Good morning, Your Honor. Good morning. My name is Jane Lee and I represent the Petitioner Appellant Ryan Butterworth in this case. The question before the Court today is, is Allen retroactive to cases on collateral review? Retroactively applicable to cases on collateral review. The Appellant puts forth two theories of Allen's retroactivity. The first is that Allen is retroactive under the watershed exception in Teague. Now in Teague said that if a new rule is substantive, then it's retroactive. If it's procedural, then it's generally not. But there is an exception to that rule and the Appellant doesn't contest that the rule in Allen is procedural. But the exception to the procedural rule is for rules of criminal procedure implicating fundamental fairness and the accuracy of the criminal proceeding. And Appellant submits that this rule in Allen is a watershed rule of criminal procedure. In Allen there were two constitutional rights at issue. The proof beyond a reasonable doubt and the right to a jury trial. Both of those rights are fundamental, implicate fundamental fairness. Both of those rights are implicit in our concept of what we think of as ordered liberty. How do you deal with Sepulveda? Your Honor, at the time that Sepulveda was decided, Sepulveda, at the time it was decided, no one knew the breach of Apprendi. Every court to look at the retroactivity of Apprendi assumed that Apprendi would be narrowly limited. Every court thought that Apprendi wouldn't reach determinate state sentencing. Apprendi wouldn't reach the guidelines. It wouldn't reach mandatory sentencing. All right. That's an argument that Sepulveda is wrong because it didn't foresee the future. But Allain and Sepulveda are on parallel tracks. Yes? Are we agreed on that? And how the courts have handled Apprendi is guidance for how they should handle Allain and questions of retroactivity. Or does your argument say, no, you can't rely on what we did earlier? My argument says you can't rely on what you did earlier. That Apprendi and Allain are on the same track. They are on the same track. But you can't rely on what you did earlier simply because there's so much we didn't know. At the time that Sepulveda was decided, it was 2002. But Apprendi, the breach of Apprendi is so much greater than we thought it would be. For the last decade and a half, the courts have just taken off with Apprendi. And it's been consistent Sixth Amendment jurisprudence except for Harris. And you can't use Sepulveda to ask yourself, is this a watershed rule? Because at the time it was decided Apprendi and Allain, by extension, do not appear to be watershed rules. Now we know that they are. Breyers has said there's no member of this court that denies that these rules, Apprendi and Allain, are implicit to our concept of ordered liberty and of fundamental fairness. And in my case, too, Your Honor, in the present case before the court, the defendant was convicted after a jury trial of dealing five grams of crack cocaine. He was subject after a jury trial to a mandatory minimum of ten years. At sentencing, proved by a preponderance by a judge-made fact, he got ten more years. That's a hundred percent increase. His mandatory minimum went from ten to twenty. That gives real meaning to those words, fundamental fairness. We're talking about fundamental fairness. Is this fair that this happened to this defendant? And well, I thought the underlying question was, is it fair to your defendant that the defense, you know, he did everything he needed to do to preserve the argument. He even took it to the Supreme Court. They denied cert because their law at the time, excuse me, our law at the time was Harris. And then they overruled Harris. And so the question is, your client, who did everything he possibly could do, does he get the benefit of the Supreme Court's change in the law? Under the usual application of the rules, he would not. And there is some risk in the result that you want to reach of upsetting a whole body of case law. Yes, Your Honor. But I think you're, Your Honor, correct me if I'm wrong, but you're addressing my second argument where I argue that a lane is not a new rule. It's an extension of Apprendi. It's, it is, it applies the established constitutional principles set out in Apprendi to a new factual situation. Statutory maxims, statutory mandatory minimums. So it's not a new rule. And when it's not a new rule, it is retro, if it's an old rule, it is retroactively applicable to cases on collateral review. And the appellant argues that a lane is not a new rule. It's an, it's an application of the principles in Apprendi. Now there's no question that his post, his first post-conviction review was not timely filed. It wasn't timely filed because as Your Honor points out, Harris was the law at the time that he would have filed a post-conviction. But he did, Your Honor's absolutely correct, he left no stone unturned in, in trying to seek his remedy. He, he... Could you, could you bring me back to Sepulveda? What, how has Apprendi itself been applied post-Sepulveda in ways that it was not being applied at the time we decided Sepulveda? So how has it become something different? Well at the time that we decided Sepulveda, we didn't realize that Apprendi would have the reach it did. In what way? Give me an example of what... Well, you're just saying you didn't anticipate a lane. I'm saying that the court didn't anticipate a lane at the time that it decided Sepulveda. And they really thought it was going to be narrowly construed. And as a matter of fact, that's why, that's why the Harris decision came about. Because Justice Breyer, who was a lawyer, thought that Apprendi would be narrowly construed. He couldn't, he acknowledged that there's no difference between the floor, the floor of a statutory floor of a penalty and the statutory maximum. There's no difference in logic. It's inconsistent to hold that one, that the statutory maximum and the statutory minimum are different, mandatory minimum are different. But he couldn't... Actually, a number of circuit courts raised that question. If this, then why that? So I don't think it's quite fair to say nobody anticipated this. It's just the Supreme Court gave one answer. But there was also a lot of circuit court discussion of that answer and whether it could possibly, in the end, be held to be correct. So this, everyone was caught by surprise, doesn't quite work. Well, maybe that's the wrong characterization that everyone was caught by surprise. But I think courts generally were looking at Apprendi as limited to statutory maximums. Facts that increased the penalty beyond the statutory maximum. But then again, why would that undercut Sepulveda? Because Sepulveda held that it wasn't a watershed rule. And I think history has shown us, the last decade and a half has shown us that it was a watershed rule. This Court has used the phrase, a sea change. Apprendi instituted a sea change in our criminal jurisprudence. And that's one of the indicators of when a rule is a watershed rule, a sweeping change. And that's exactly what happened with Apprendi. And Apprendi and Elaine, they're all continuations of Winship, which the reasonable doubt burden, which the Supreme Court found retroactively applicable. I think in hindsight, now from where we're standing in 2014, we realize more than we realized in 2002. That's all I'm saying. And that we realize the importance of Apprendi. Is there any Supreme Court decision that says whether or not a rule was a watershed rule when it came out in its initial opinion? It became so later because of what we said after we decided that case? Well, no. I'm not aware of any Supreme Court decision. I think Apprendi is a different situation. And also, the Supreme Court didn't rule at all on, I mean, that's important to remember. They haven't ruled on the retroactivity of Apprendi. It's all the lower courts, the district and circuit courts that have ruled on the retroactivity of Apprendi. The only retroactivity case from the Supreme Court is Summerlin. And Summerlin only dealt with the right to jury trial, the judge already found by proof beyond a reasonable doubt. And this case deals with both those rights, proof beyond a reasonable doubt and the right to a jury trial. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Renee Bunker on behalf of the United States from the District of Maine. Principles first, there is no doubt that the rights implicated, the jury trial rights implicated in Alain, like those in Apprendi, like those in Booker, like those in Ring, like those in Duncan v. Louisiana, are fundamental. They always have been and they continue to be. So too is the principle of finality discussed in Teague, where the Court explained that principle was essential to the operation of our criminal justice system. And here we are now balancing those two fundamental interests in light of the limitations of the habeas statute and, of course, doctrine of non-retroactivity applied to what we agree is a new rule of criminal procedure here. Just a quick history, the Supreme Court in Duncan held that jury trial rights must apply to states. The very same year, the Supreme Court in DeStefano held that Duncan was not retroactively applicable. Then in 86, we have McMillan, of course, which predated Harris by 16 years, holding that facts implicating a mandatory minimum could be decided by a judge. Teague followed, confirming that the new rule announced in Batson was not retroactively applicable. And then, of course, we have Apprendi and we have Ring that follows in 2002, where the Supreme Court specifically finding that as an extension of Apprendi, the facts implicating the death penalty in Ring must be found by a jury. This court's suppulvative opinion followed the next year, which, aptly and correctly, we submit held that Apprendi's new rule of criminal procedure was not retroactively applicable because it was not a watershed dimension. Did other circuits agree with Sepulveda? I'm sorry? Other circuits when they faced the question, did they reach the same outcome as the first one? The next sentence, Chief Judge Lynch, is in so doing, and I think Sepulveda and maybe the Booker opinion that followed collected cases that in so doing, this circuit joined virtually every other circuit to hold that Apprendi was not retroactively applicable. Indeed, that opinion has not at all been undermined by hindsight or any subsequent extension of Apprendi. To the contrary, it was bolstered the following year by the Supreme Court's Summerlin opinion. And there, the court held again that the facts implicating the death penalty in Ring, I mean that the holding in Ring regarding the death penalty, was not of watershed dimensions and was not, notwithstanding how fundamental those principles were, was not retroactively applicable to cases on collateral review. You focused on the purely, the question of who decides, judge or jury. It seems to me there's another bigger issue here, which is whether it's reasonable doubt or preponderance of the evidence. A criminal defendant can agree to waive a jury, but I'm not sure he can waive the reasonable doubt standard. Why isn't that more of a watershed change to say that you've got to go from preponderance to reasonable doubt? Well, I think that both are in play here, and I disagree that that distinguishes Summerlin because of the nature of the Arizona that judges found beyond a reasonable doubt. Those facts implicating the death penalty, I'm not sure one trumps the other. Apprendi implicated, if I recall, both of those principles, and yet courts have repeatedly held, the Supreme Court, albeit not directly, but certainly with Ring as an extension, that Apprendi, the extension of Apprendi in Ring was not retroactively applicable. I'm not aware of any case in the circuit, other circuits, to have concluded that Apprendi or Ring, for that matter, is retroactively applicable. And, Judge Cahill, I think you also asked about, and Chief Judge Lynch, in hindsight, does, I'm also not aware of any court holding that in hindsight, the subsequent extensions of Apprendi somehow have rendered Apprendi or any of those other predecessors to it, the Sixth Amendment cases, watershed in hindsight. You point to the tension here, which we're all aware of. We now know someone had a right, in fact, this fellow was right, what he was arguing to the courts, and the courts were all wrong. But we have finality and propose, which is important as well. In this case, if we were to hold that when someone actually timely raises it and was right and preserved their argument at each stage of the proceeding, it will apply retroactively. That really doesn't upset the finality applecart in any sort of floodgates way, does it? In other words, we don't have to worry about there being thousands of or even hundreds of claims. This is a pretty rare situation where someone was more prescient than all the courts that decided his case. Well, not necessarily. Because you've established, then, a set of rules that would be applied, but I'll let counsel. A few comments. First of all, we don't know how many mandatory minimums since, say, McMillan in 1986 would fall into this category. And I think the courts, though we don't cite it, the courts' opinion addressing the Booker is not retroactive, discusses that. If we're going to open all of these final convictions, we don't know how many, to relitigation and retrials, we should let the Supreme Court make that determination. Second, I would direct, Judge Cowdery, your question goes back a little bit to Summerlin, where there the majority discussed similar sort of equity concerns. And are we really upsetting the government's reliance on these final convictions? And one of the things the Supreme Court pointed out was that is not particularly relevant under the Teague analysis that this court must faithfully apply. And second, the relevant framework. We are. We are. It may seem unfair, but these are the choices that this Congress and Supreme Court have made to strike a balance between finality and error-free proceedings. And the Teague court itself discusses, of course, the interests in finality and the relevant framework as not necessarily being the purpose of the new rule for which the Habeas statute that's made available to certain petitioners. And in striking that balance, those who define the scope of the Habeas petition may legitimately so decide in many, most, or all of the cases, I don't know if you say all, but I'm paraphrasing from Teague, that that balance is to be struck most of the time against competing interests in relitigating final convictions under all the standards that are in place at the time the petition is filed. And I might add just one more point. Mr. Butterworth was certainly, and counsel below, certainly diligent in raising this issue in the trial context and on direct appeal and to the petition to the Supreme Court. However, with regard to this equitable tolling argument, he did not raise a timely 2255 petition. He was approximately four years late. And to the extent the court even goes to equitable tolling, which doesn't get past the need to decide whether a lien is retroactively applicable. He was not diligent at that phase and thus is now trying to implicate this tolling document that wasn't raised below and beyond the certificate of appealability. We just submit, unless the court has additional questions, going back to a lien, and we all agree its fundamental principles are in play here. The lien court itself held that there is no, just going back to principles, there is no basis in principle or logic to distinguish the facts that increase a statutory maximum, a printy, from those that implicate a mandatory minimum, a lien. And there is no basis, we have found none, in principle or logic for distinguishing the unequivocal, non-retroactivity of a printy from the non-retroactivity of a lien. And to do so would just create yet another anomaly that's not supported by the law. With that, we'll ask the court to affirm. Thank you.